# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH COLON | Case #  06-CR-63 RJL |

## *MEMORANDUM IN AID OF SENTENCING*

Joseph Colon by and through his attorney, Richard Winelander, submits this memorandum to aid the Court in sentencing.

### *OVERVIEW*

On November 26, 2003, Joseph Colon, an information technology (IT) specialist, employed by BAE systems, was assigned to the Springfield, Illinois Field Office of the FBI to help migrate its computer network from one operating system to another. This conversion was known as the Trilogy Project. Mr. Colon had previously been issued a top-secret clearance when he was in the Navy. In order to facilitate his new job his security clearance was reinstated by the Department of Defense. Once on site Mr. Colon worked directly with the IT department of the Springfield Field Office.

During the conversion process it became apparent to Mr. Colon and the FBI's Springfield IT department that the conversion was being bogged down by a "ticket" procedure. This procedure required a "ticket" to perform such routine and mundane tasks as setting up workstations, printers, user accounts and to move individual computers from one operating system to another. Obtaining a ticket involved making a written request to and receiving authorization from the DC Field Office of the FBI. The "Ticket" process could take between 1 and 3 days.

By early March 2004, Mr. Colon and the IT department became frustrated with the bureaucratic delays occasioned by the "Ticket" process. At this time Agent Stan Pierce of the FBI's Springfield IT department gave a Mr. Colon password that allowed him to gain access, to the

FBI's secret internal computer network where usernames and passwords were kept in SAM files. Mr. Colon then used the password provided to him by Agent Pierce to gain entry into the secret network where he found an encrypted SAM file. Then using tools[1] downloaded from the internet for free he cracked the SAM file for the purpose of obtaining usernames and passwords with the administrative level privileges. These administrative privileges allowed Mr. Colon to bypass the ticket procedure and speedup the conversion process.

March 2, 2004, was the first time Mr. Colon, using the password given to him by Agent Pierce, accessed the secret network- obtained and then cracked a SAM file in order to obtain administrative level privileges (Count I). Because, FBI agents are required to change their passwords every 90 days, Mr. Colon access FBI's secret internal computer network on three other occasions: May 24, 2004 (Count II); July 26, 2004 (Count III) and November 16, 2004(Count IV).

During this entire period Agent Pierce, Agent Bill O'Sullivan and Agent Jay Bierman, who comprised the IT department of the Springfield Field Office, knew and appreciated what Mr. Colon was doing to facilitate the conversion to the Trilogy Operating System. However, the Computer Intrusion Squad of the Washington DC Field Office saw it another way.

The defenses position is - that under the totality of the circumstances in light of and considering the statutory sentencing factors the appropriate sentence in this case would be probation.

## THE STATUTORY SENTENCING FACTORS

The imposition of a sentence in this case is guided by 18 U.S.C.A. § 3553. This statute requires the sentencing court to consider a series of factors for the purpose of fashioning a sentence that is "*sufficient, but not greater than necessary*", 18 U.S.C.A. § 3553(a) *et seq*, to:

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[1] Pwdump and L0phtcrack.

18 U.S.C.A. § 3553(a)(2). A review of these factors follows.

(1)
### THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

At first blush hacking into the FBI's secret database seems to be a serious crime. However when you factor Mr. Colon was doing it at the request and with the approval of the Springfield IT department the initial perceived severity of the crime diminishes radically. This crime was not motivated by the baser instincts such as greed, malice, lust or anger. Rather it was motivated by a desire to do a good job for the FBI and see the Trilogy Project completed in time and under budget. Other than congratulations for a job well done there was nothing in it for Mr. Colon. His motivations though misguided were pure.

As the Court can see, from the Presentence Investigative Report (PSR), Mr. Colon is a hard-working family man dedicated to supporting his wife and three children. He enlisted in the United States Navy within 30 days of graduating high school. Upon being honorably discharged from the Navy he gradually moved from one better paying job to another. He has been gainfully employed his entire adult life. Notwithstanding the fact that he was working a full-time job he was able, in his spare time, to obtain a Bachelor's of Science Degree in Computer Networking while maintaining a 4.0 grade-point average. Moreover he is a Microsoft certified systems engineer. Other than a youthful prank, in a junk yard with 11 other 12-year-olds, he has no run-ins with the law.

(2)
### THE NEED FOR THE SENTENCE IMPOSED

A sentence in Federal Court should: (A) reflect the seriousness of the offense, in order to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C.A. § 3553(a)(2). In the case *sub*

*judice* a sentence of probation would be "sufficient, but not greater than necessary" to satisfy these criteria. This is so because of the peculiar nature of the offence and Mr. Colon

To begin with Mr. Colon has the utmost respect for the law. As previously mentioned he was initially able to access the top-secret server because his immediate supervisors at the FBI gave him access. This compounded by the fact that he already had a top a secret clearance does much to mitigate the seriousness of the offense. With respect to the element of punishment, we would submit that the actions of the Computer Intrusion Squad of the Washington DC Field Office - in isolating Mr. Colon without food or breaks while subjecting him to repeated polygraph examinations - peppered with threats of life in jail for treason- quite frankly scared this young man out of his wits. The repeated interviews and the criminal process that he's been involved with to date have not only afforded sufficient punishment of Mr. Colon but clearly serve to deter any wrongful conduct what his part in the future. It must be remembered that he also lost his Top Secret security clearance as well as his job.

The need for general deterrence, of the public at large, is not an issue in this case. The fact of matter is the public will never know about this prosecution. The parties have entered into a confidentiality agreement to prevent public dissemination of what happened here. Finally, Mr. Colon is not in need of educational or vocational training, medical care, or other correctional treatment.

(3)
### THE KINDS OF SENTENCES AVAILABLE

Joseph Colon has pled guilty to four counts of intentionally accessing a computer while exceeding authorized access and obtaining information from any department of United States in violation of 18 U.S.C.A. §1030(a)(2)(B). By statute, this crime constitutes a class A misdemeanor, 18 U.S.C.A. §3581(b)(6). As a result Mr. Colon could sentenced from probation, pursuant to 18 U.S.C.A. §3561, to one year on each count. The Court can order that the imposition of his sentence, on each count, run concurrent or consecutively. 18 U.S.C.A. §3584. Thus Mr. Colon can receive a sentence anywhere form probation to four years.

Additionally Mr. Colon is subject to a fine of up to $100,000, pursuant to 18 U.S.C.A. §3571(b)(5) or up to two times the pecuniary gain or loss to the government. 18 U.S.C.A. §3571(d). He must pay a mandatory Special Assessment of $25.00 on each count. 18 U.S.C.A. §3013(a)(1)(A)(iii). Finally, Mr. Colon at the Court's discretion, is subject a one-year term of supervised release. 18 U.S.C.A. §3583(b)(3.).

(4)&(5)<br>
THE SENTENCING GUIDELINE RANGE AND POLICY ESTABLISHED FOR THE OFFENCE AND OFFENDER

Although the parties are in agreement that Mr. Colon has a criminal history score of 0, which places him in criminal history category I, they are in dispute as to the appropriate guideline range. The PSR indicates that the appropriate offense level is 13 while the defense maintains the appropriate offense level is 5. If the government's position is correct Mr. Colon at level 13 is in Zone D and is subject to a term of imprisonment of 12 to 18 months. On other hand if the defense is correct Mr. Colon is in Zone A with an offense level of 5 resulting in a sentencing guideline range of probation to 6 months.

The PSR and the defense agree that factors present themselves in this case that may warrant downward departures for aberrant behavior pursuant to U.S.S.G. § 5K2.20 and/or because his family ties and responsibilities constitute extraordinary circumstances. U.S.S.G. § 5H16. The basis for this offense level dispute is as follows:

### Computation of the Guideline Range in the Presentence Investigative Report

```
Base offense level                        6      U.S.S.G.§2B1.1(a)(2)
Specific offense characteristic   6             U.S.S.G.§2B1.1(b)(1)(d)      Loss of $42,500
Specific offense characteristic   2             U.S.S.G.§2B1.1(14)(A)(i)(1)Government computer
Adjustment for role in the offense   2          U.S.S.G.§2B 1.3              Position of public trust
Adjusted offense level                   16
Adjustment –
Acceptance of responsibility             -3
Total offense level                      13
```

### Computation of the Guideline Range by the Defense

```
Base offense level                        6      U.S.S.G.§2B1.1(a)(2)
Specific offense characteristic           2      U.S.S.G.§2B1.1(14)(A)(i)(1)Government computer
Adjusted offense level                    8
```

*Richard Winelander Esq.*
1005 North Calvert Street
Baltimore, MD  21202
410-576-7980

```
Adjustment -
Acceptance of responsibility        -3
Total offense level                  5
```

The defendant objects to loss calculation contained the report insomuch that it increases his base offense level by six points as a result of the $42,500 loss the FBI claims. The defense has seen no documentation, let alone credible evidence, supporting this amount. Therefore we are at a loss to explain, contradict, rebut or litigate the amount. To the extent that it represents the cost of changing passwords for all FBI employees the figure is overblown and unnecessary. Employees are required to change their password every 90 days a process that at most takes seconds.

Application note 3(A) indicates that the general rule is the loss under section (b)(1) is the "greater of actual loss or intended loss." Actual loss means the reasonably foreseeable pecuniary harm that resulted from the offense. Here there was no foreseeable harm because everything the defendant did was at request of the FBI's agents in Springfield. His initial access to the FBI's secret internal computer network was a result of and only possible because the FBI agent Stan Pierce gave him access. This was done to avoid the "ticket procedure" to save time during the rollover from one operating system to another. Moreover there was no intended loss because everything the defendant did was for the benefit of the FBI. He intended no harm to the FBI rather he intended only to help it save time and money.

The defendant objects to the "Position of public trust" adjustment because he was not in a "position of public trust." Additionally the defendant did not abuse a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. Everything he did was known to and or at the request of the FBI agents in Springfield.

### Downward Departures

Mr. Colon moves this Honorable Court to grant him downward departures for aberrant behavior pursuant to U.S.S.G. § 5K2.20 and/or because his family ties and responsibilities constitute extraordinary circumstances. U.S.S.G. § 5H16.

Section, U.S.S.G. § 5K2.20, which became effective on November 1, 2000, provides:

**§5K2.20. <u>Aberrant Behavior</u> (Policy Statement)**

A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. However, the court may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood); or (5) the defendant has a prior federal, or state, felony conviction, regardless of whether the conviction is countable under Chapter Four.

The application notes provide in pertinent part:

1. For purposes of this policy statement--"Aberrant behavior" means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life…

2. In determining whether the court should depart on the basis of aberrant behavior, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

A departure pursuant to this section is available because the offense did not involve serious bodily injury or death, the discharge of a firearm or drugs. Mr. Colon has no criminal history whatsoever. When considering the factors delineated in application note the Court can see:

a. *Mental and emotional conditions*. Mr. Colon suffers no physical or psychological ailments.

b. *Employment record*. Mr. Colon has been continuously and gainfully employed for an extensive period of time

c. *Record of prior good works*. Mr. Colon voluntarily entered the navy where he served his country for over five years.

d. *Motivation for committing the offense*. He tried to save time and money, for the FBI by circumventing bureaucratic roadblocks.

e. *Efforts to mitigate the effects of the offense*. In an effort to mitigate the effects of his conduct Mr. Colon underwent two straight days of polygraph examinations and

countless debriefings with FBI agents. Additionally he agreed to forfeit thousands of dollars of his personal computer equipment.

After reviewing the facts of this offense and of Mr. Colon's background it becomes clear that his conduct over this fourteen months, was an anomaly in a life that is otherwise marked by hard and honest work.

Mr. Colon moves this Honorable Court to grant him warrant downward departure, pursuant to U.S.S.G. § 5H16, because his family ties and responsibilities constitute extraordinary circumstances. Mr. Colon is the sole support of the 4 other members of his family. His wife Sarah is a stay at home mom caring for two month old Violet, 19 month old, Thomas and 3 year old, Madelyn. This small family is Hundreds of Thousands of Dollars in debt with only Joseph to support it. If he is imprisoned his wife and children are cast adrift in a sea of hopelessness. If Mr. Colon's family ties and responsibilities do not constitute extraordinary circumstances, counsel would be hard pressed to figure out what does.

**(6)**
**The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Counsel can find no similar cases with which to compare. Most computer crimes involve massive greed, *U.S. v. Ray*, 428 F.3d 1172 (8th Cir. 2005) or extreme malice *U.S. v. Mitra*, 405 F.3d 492 (7th Cir. 2005). For example in *Ray*, the district court sentenced the defendant to eighteen months in prison for attempting to extort $2.5 million from Best Buy by sending the company emails threatening to exploit a breach in its computer security. See also, *U.S. v Bae,* 250 F.3d 774, 346 U.S.App.D.C. 101 (DC Cir 2001); *U.S. v. Ray*, 428 F.3d 1172 (8th Cir. 2005) (Defendant who used computer terminal to generate lottery tickets with a face value of $525,586 was sentenced to eighteen months). In *Mitra*, the defendant, with two previous hacking convictions was sentenced to ninety six months after he disrupted a computer-based radio system for police, fire, ambulance, and other emergency communications servicing Milwaukee, Wisconsin. In *U.S. v. Middleton*, 231 F.3d

1207 (9th Cir. 2000) the defendant was sentenced to three years probation subject to the condition he serve 180 days of community confinement for maliciously causing mayhem after hacking into his ex-employer's system.

The closest case counsel can find is *Sawyer v. Dept. of Air Force*, 31 M.S.P.R. 193 (M.S.P.B. 1986). Although *Sawyer* was not a criminal prosecution it does provide some guidance. In *Sawyer* the defendant appealed his firing based on the charge that Sawyer altered official Air Force computer contracts, received unauthorized agency records and submitted fraudulent invoices resulting in $17,738 in U.S. Treasury checks being improperly disbursed to him. Sawyer claimed the he engaged in this conduct solely to impress upon the agency the lack of security safeguards. The Merit System Protection Board affirmed his removal. Here, like in *Sawyer*, Mr. Colon has also lost his job for doing it in an inappropriate way.

**(7)**
**The need to provide restitution to any victims of the offense.**

As previously mentioned the defense does not know the basis for the restitution claims by the FBI. With that being said Mr. Colon has always indicated a willingness to pay any restitution that is rightfully due as a result of his conduct. All we ask is that he has a meaningful hearing to determine what an accurate restitution amount would be.

*CONCLUSION*

Mr. Colon is a first-time offender who intentionally accessed a computer while exceeding authorized access and obtaining information from the FBI in violation of 18 U.S.C.A. §1030(a)(2)(B). He was motivated by a desire to do a good job for the FBI and see the Trilogy Project completed in time and under budget. The entire process he went through of being investigated and prosecuted have sufficiently deterred any similar conduct in future. When all of the sentencing factors are considered a sentence of probation would be appropriate this case.

Wherefore, Joseph Colon, respectfully request is Honorable Court to sentence him to a period of probation and ordered to pay the $100.00 Special Assessment, Court Costs and restitution.

Respectfully submitted,
Joseph Colon
By and through counsel

/S/

Richard Winelander
D.C. Bar #: 420697
1005 North Calvert Street
Baltimore, MD 21202
rw@rightverdict.com
410- 576-7980

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY**, that a copy of the foregoing objections to the Presentence Investigation Report was sent by mailed/via e-mail this 16th day of June 2006, to:

John Carlin, Esq.
Office of the United States Attorney
Judiciary Center
555 Fourth Street N.W.
Washington, D.C. 20001

/s/

Richard Winelander