**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. CR-06-063-01 (RJL)** |
| | **:** | |
| **JOSEPH COLON,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

I.      **BACKGROUND**

On March 24, 2006, defendant Joseph Colon ("defendant") pled guilty to a four-count misdemeanor information that charged defendant with intentionally accessing a computer while exceeding authorized access and obtaining information from a department of the United States. During his plea colloquy, defendant admitted accessing files located on a Washington DC, server containing the hash value of the passwords of all active Federal Bureau of Investigation (FBI) personnel with passwords to the FBI's classified computer network system.  Hashes are essentially encrypted versions of user passwords, but not the actual passwords themselves.  Once defendant obtained the hashes, defendant further admitted to using hacking software, a program named "L0phtcrack" (pronounced "loft crack"), to decrypt or "crack" the hash by using dictionary word comparisons, lists of common passwords, and character substitution techniques, among others.  The defendant cracked thousands of passwords including the password of the Director of the FBI.

At the time of the offenses, defendant was a contractor for BAE systems, a company hired

to assist in the transition of the FBI's computer systems to a new classified computer networking

system in a project called "Trilogy." As of December 8th, 2003, Defendant was assigned to the

Springfield, Illinois field office of the FBI as an information technology specialist (ITS) contractor.

In his role as Field Office contractor, defendant was not authorized to access the FBI's classified file

containing the computer network user-names and the encrypted passwords for all users on the

network. Defendant exceeding his authority on the system at least four times to obtain the encrypted

passwords of all users and then, each time, cracked thousands of those passwords. The four times

include: March 2, 2004; May 24, 2004; July 26, 2004; and November 16, 2004.

## II.     SENTENCING CALCULATION

### A      Statutory Maxima

The defendant pled guilty to four counts of Intentionally Accessing a Computer while

Exceeding Authorized Access and Obtaining Information from any Department of the United States,

in violation of Title 18, United States Code, Section 1030(a)(2)(B). The maximum sentence for each

count is one year is confinement and the maximum fine is $100,000 per count of conviction.

### B.     Sentencing Guideline Calculation

The government agrees to the Guidelines calculations utilized in the Presentence Report

("PSR") which correctly calculate the defendant's total offense level at 13. See PSR ¶ 27. This

includes the base offense level of six pursuant to U.S.S.G. § 2B1.1(a)(2) and a six-level enhancement

for "loss" of more than $30,000 and less than $70,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(D). There

is an additional two-point enhancement because the instant offense involved the abuse of a position

of public trust. U.S.S.G. § 3B1.13. The government moves for a three point reduction for acceptance

of responsibility which yields a total offense level of 13.  The PSR also has calculated correctly the

defendant's criminal history as Category I.  See PSR ¶ 30.  Therefore the guideline range for

defendant Colon is correctly calculated in the PSR as 12 - 18 months.  See PSR ¶ 55. The PSR writer

notes that certain factors may warrant a departure: USSG §§ 5H1.6 (Family Ties and

Responsibilities) and 5K2.2 (Aberrant Behavior).   For the reasons set forth, infra §III of this

Memorandum, the government respectfully recommends that the Court sentence the defendant at the

bottom of the Guidelines range calculated in the PSR.

**III.   DEFENDANT SHOULD BE SENTENCED AT THE LOW END OF THE GUIDELINE RANGE AS CALCULATED IN THE PSR .**

A)   In this case, the defendant, in a post-September 11 age, abused the trust placed in him

by the FBI to gratuitously hack the passwords of every FBI employee, including the director, with

access to the FBI's classified secret database.  The defendant's actions, when discovered, cost the

FBI thousands of man-hours and millions of dollars to rectify and resulted in the temporary

shutdown of the entire classified system.  Records kept on the classified system, to name just a

couple of the many critical examples, include information related to people in the witness protection

program and details on counterespionage activity.   The defendant's actions took place in the span

of over a year's time, involved the use of other people's identity to log on to the system, required 4

separate intrusions beyond authorized access into the system and involved the use of hacking

software that was not permitted on the FBI system (and the software itself was a cracked copy).  The

scope of the activity, cracking thousands of passwords, would require many hours of dedicated time

to accomplish even with the hacking software involved.

The guidelines are correctly calculated in the PSR.  The defendant raises two objections: one

to the loss figure and the second to the public trust or special skill enhancement.  The loss figure is

a very conservative estimate based solely on an estimation of the cost of the unanticipated need to

change every password in the system and verify that no compromised passwords were used again.

In fact, the damage assessment alone, broadly construed, could have brought the loss figure into the

millions of dollars because of the steps taken to ensure the intrusion did not compromise national

security information.  As for position of trust or special skill enhancement, of course having a secret

security clearance and being granted access to a classified system as a computer specialist meets both

prongs of the definition.  Moreover, the defendant used his access to gain unlawfully identification

information for access to the same system – indeed, he used the identification to enter the system in

the name of another.  The defendant's practice of accessing the system under assumed identities is

linked to the extraordinary cost incurred by the FBI in conducting a damage assessment of the system

(a cost that is NOT included in the conservative loss figure).

      B)     Defendant raises two possible bases for departure under the Guidelines. First,

Defendant moves the Court to grant a downward departure for aberrant behavior pursuant to

U.S.S.G. 5K2.2.  The motion requires a two part analysis: 1) is the behavior aberrant?; 2) if so, is

the case involving the aberrant behavior so extraordinary as to warrant a downward departure?

Before even reaching the second part of the analysis as to whether or not a departure is warranted,

the threshold question for the Court to consider is one of definition.  And, as a threshold matter, the

defendant's conduct was by no means aberrant.  In fact, the conduct in question violates every prong

of the definition of aberrant behavior as defined in the policy statement accompanying U.S.S.G.

5K2.2.  The policy statement defines aberrant behavior as a single criminal occurrence or single

criminal transaction that (A) was committed without significant planning; (B) was of limited

duration; and (C) represents a marked deviation by the defendant from an otherwise law abiding life. Here the conduct involves multiple criminal occurrences (four separate intrusions); required acquiring and utilizing two separate software products and took multiple hours on each occasion; took place over the span of 14 months; and, finally, according to the defendant's admissions, does not represent the first time he has committed such conduct (he also exceeded authorized access during a prior period of employment in the Navy).   In short, there can be no aberrant behavior departure when, by definition, the behavior is not aberrant.

Second, the defendant contents that his position as breadwinner for a stable family of five represents an extraordinary circumstance pursuant to U.S.S.G. 5H1.6 and warrants a departure. Here, under applicable case law, the record is not sufficiently developed  for such a finding. In U.S. v. Dyce, 91 F 3d 1462 (D.C. Cir. 1996) the Court held that the defendant's status as an unwed mother, her responsibility for the care of her three children and the fact that she was breast feeding did not alone make for a convincing showing of a special hardship under U.S.S.G. 5H1.6. Subsequently, in U.S. v. Leandre, 132 F.3d 796 (D.C. Cir. 1998), the Court found that the defendant's status as a single father of two young children, who might be placed in foster care upon the defendant's incarceration, did not present the extraordinary circumstances required for a downward departure. On the facts presented to date, compared with prior case law, a short duration of imprisonment does not represent the sort of extraordinary hardship required for the departure.

C)       In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).   It is vital that the Court send a deterrent message that "curiosity" hacks into sites containing national security information

is a matter of grave concern and criminal import. The compromise of personal information and, more vitally, national security information is one of the most pressing issues faced by the United States. Given the seriousness of the defendant's actions – both the impact on national security of the defendant's decision to hack and the negligence and disregard for national security in the decision to decrypt thousands of passwords including the Director of the FBI and place them on insecure mediums – the government would ordinarily recommend a sentence at the high end of the Guideline range. However, given the defendant's lack of prior criminal history, history of government service, prompt and continuing cooperation with the investigation and motivations for the crime, the government recommends that the Court sentence the defendant to a period of incarceration at the low end of the guideline range. Leniency is best expressed through a Guidelines sentence thus taking into account the circumstances of the defendant while simultaneously ensuring that a benchmark exists providing a measure of uniformity: all similarly situated defendants should receive similar sentences. Accordingly, the government believes that a term of incarceration at the low end of the prescribed Guideline range is appropriate and will give both the government and the defendant the benefit of the bargain negotiated.

## IV.    RESTITUTION

The victim organization has documented a loss of $42,500. As the PSR states, the Court shall order full restitution to the victims without consideration of the economic circumstances of the defendant   Accordingly, the government requests that the Court order restitution in the amount of $42,500 to the FBI.

## V.    CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to a

term of incarceration at the low end of the prescribed range of 12 - 18 months and further that the

Court order the defendant to pay full restitution at the conclusion of any term of incarceration.

Respectfully submitted,
KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


_____
JOHN P. CARLIN
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 353-2457

### CERTIFICATE OF SERVICE
I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of
Sentencing has been served by fax upon counsel for defendant.


_____
JOHN CARLIN
ASSISTANT U.S. ATTORNEY